UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,

Plaintiff,

- against -                         Civil No. _____

$259,988.61  in U.S. Currency,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

## VERIFIED COMPLAINT FOR FORFEITURE

Plaintiff, United States of America, by its attorneys, Rod Rosenstein, United States Attorney for the District of Maryland, and Stefan D. Cassella, Assistant U.S. Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.      This is a civil forfeiture action against U.S. currency involved in violations of the Controlled Substances Act and the money laundering statutes that is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A).

## THE DEFENDANTS IN REM

2.      The defendant is $259,988.61  in U.S. Currency.

3.      The defendant property comprises the funds seized from the following locations on the following dates:

| Date | Amount | Location |
|------|--------|----------|
| 3/7/13 | $1,430.00 | 120 Polk St., Cumberland, MD |
| 3/7/13 | $1,072.41 | 215B Virginia Ave, Cumberland, MD |
| 3/7/13 | $1,535.00 | 14401 National Highway, LaVale, MD |
| 3/7/13 | $958.81 | 130 N. Mechanic st, Cumberland, MD |
| 3/7/13 | $232,441.99 | M&T Bank account ****3289 |
| 3/7/13 | $555.18 | M&T Bank account ****3364 |
| 3/7/13 | $21,995.22 | M&T Bank account ****4541 |
|  | $259,988.61 |  |

## JURISDICTION AND VENUE

4.  Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property.   This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, over an action for forfeiture under 28 U.S.C. § 1355(a), and over this particular action under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A).

5.  This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. 1355(b).  Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(C).

6.  Venue is proper in this district pursuant to 28 U.S.C. §1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district and

2

pursuant to 28 U.S.C. § 1395 because the property is located in this district.

## BASIS FOR FORFEITURE

7.    The defendant currency is subject to forfeiture under the following alternative theories:

    A.    Pursuant to 21 U.S.C. § 881(a)(6) because it represents moneys, negotiable instruments and other things of value furnished and intended to be furnished in exchange for a controlled substance analogue, or proceeds traceable to such an exchange, in violation of 21 U.S.C. §§ 841, 813 and 802(32)(A);

    B.    Pursuant to 21 U.S.C. § 881(a)(6) because it represents moneys and negotiable instruments used and intended to be used to facilitate the lease, rent, use, maintenance, management and control of a place, to wit: a business known as Puff & Stuff, for the purpose of manufacturing, distributing, storing and using a controlled substance analogue, in violation of 21 U.S.C. §§ 856, 813 and 802(32)(A);

    C.    Pursuant to 18 U.S.C. § 981(a)(1)(A) because it represents property involved in a violation of 18 U.S.C. §§ 1956 and 1957, or property traceable to such property.

8.    To the extent that it is necessary to do so, Plaintiff intends to rely on the provisions of 18 U.S.C. § 984 to establish that the defendant property is the

3

property involved in the violations of 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A) described above.

## FACTS

9.   This complaint is based on the facts set forth in the Declaration of Joseph S. O'Keefe, Special Agent of the Drug Enforcement Administration, which is attached and incorporated herein.

10.   Based on the foregoing, there are sufficient facts to support a reasonable belief that the defendant funds are forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the plaintiff prays that all persons who reasonably appear to be potential claimants with interests in the defendant property be cited to appear herein and answer the complaint; that the defendant property be forfeited and condemned to the United States of America; that upon Final Decree of Forfeiture, the Secretary of the Treasury dispose of the defendant property according to law; and that the plaintiff have such other and further relief as this Court deems proper and just.

Dated: August 21, 2013

Respectfully submitted,

Rod J. Rosenstein
UNITED STATES ATTORNEY
District of Maryland

By: _____

Stefan D. Cassella
Assistant U.S. Attorney
36 South Charles Street
Fourth Floor
Baltimore, MD 21201
410 209-4986

## <u>VERIFICATION</u>

I, Stefan D. Cassella, declare under penalty of perjury as provided by 28 U.S.C. § 1746, that the foregoing Complaint for Forfeiture *in rem* is based on reports and information furnished to me by a Special Agent of the DEA, and that everything contained therein is true and correct to the best of my knowledge and belief.

Stefan D. Cassella
Assistant U.S. Attorney

6

# DECLARATION

This affidavit is submitted in support of a complaint for forfeiture of $259,988.61 in United States Currency.

I, Joseph S. O'Keefe, Special Agent of the Drug Enforcement Administration ("DEA"), submit that there are sufficient facts to support a reasonable belief that the $259,988.61 in United States currency constitutes (1) money, negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; and (3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act in violation of 21 U.S.C. § 841 and thus is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

### Applicable Statutes

a.      Title 21 U.S.C. section 802(32)(A) states:

The term "controlled substance analogue" means "a substance –

(i) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II; [and either]

(ii) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or

(iii) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II.

*See United States v. Klecker*, 348 F.3d 69, 71 (4th Cir. 2003) (to establish that a substance is an analogue, the government must prove a chemical similarity to a controlled dangerous substance and either a similar effect as a controlled dangerous substance or that the defendant represented the substance to have similar effects as a controlled dangerous substance).

b.      Title 21 U.S.C. section 813 states:

A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in Schedule I.

c.      The Administrator of the DEA issued a final order temporarily making 1-pentyl-3-(1-naphthoyl)indole ("JWH-018") a Schedule I controlled dangerous substance, effective March 1, 2011. *See* 76 Fed. Reg. 11075-01, 21 C.F.R. § 1308.11(g)(3).

d.      Congress passed a law making JWH-018 a Schedule I controlled dangerous substance, effective July 9, 2012. *See* Pub. L. No. 112-144, § 1152; 21 C.F.R. § 1308.11(g)(3). This law also made 1-(5-fluoropentyl)-3-(1-naphthoyl)indole ("AM-2201") a Schedule I controlled dangerous substance. *See* 21 C.F.R. § 1308.11(g)(11).

e.      Analysis conducted by DEA on analogues such as UR-144 and XLR11 has concluded that these analogues are substantially similar in chemical structure and have similar pharmacological effects on the central nervous system to those of the Schedule I banned substance JWH-018. *See* http://www.deadiversion.usdoj.gov/drug_chem_info/spice/spice_ur144_xlr11.pdf.

f.      The Deputy Administrator of the DEA issued a final order temporarily making (1-pentyl-1H-indol-3-yl)(2,2,3,3-tetramethylcyclopropyl)methanone ("UR-144") a Schedule I controlled dangerous substance, effective May 16, 2013. *See* 78 Fed. Reg. 28735-01, 21 C.F.R. § 1308.11(h)(9).

**Basis for the Investigation**

g.      In April 2012, the Maryland State Police received complaints about a business called "Puff & Stuff," located at 174 North Center Street, Cumberland, Maryland. The complaints stated that the business is a "head shop," i.e., a business that sells drug-related paraphernalia including smoking devices and other related paraphernalia.

h.      The complaints also stated that Puff & Stuff was selling synthetic drugs. The synthetic drugs are often labeled as different brands, but they are commonly referred to as "Spice" or "Potpourri" (herein referred to as "Spice").

i.      Based on the complaints, a task force of the Maryland State Police determined to investigate Puff & Stuff by conducting controlled purchases from the store to ascertain the contents of the store and the sales being conducted.

j.      The Puff & Stuff business located at 174 North Center Street, Cumberland, Maryland, is no longer in operation, because it moved to a new location. Puff & Stuff currently operates at three locations: 130 North Mechanic Street, Cumberland, Maryland; 14401 National Highway, LaVale, Maryland; and 215 B Virginia Avenue, Cumberland, Maryland.

k.      All three Puff & Stuff stores are open for business and operate normal business hours.

l.      All three Puff & Stuff stores offer smoking devices alongside of and with the controlled substance analogues described herein.

m.      All three Puff & Stuff stores utilize a computer system to track and monitor sales. They also offer and utilize a credit card machine to accept credit and debit cards. The electronic transfers are deposited directly to a bank.

n.      Charles William Casey, Jr. ("Casey Jr.") is the owner of the Puff & Stuff businesses.

o.      Charles William Casey, Sr. ("Casey Sr.") and Traci Casey ("Traci") operate the business with Casey Jr.

p.      Casey Jr., Traci, and Casey Sr. reside at 129 Polk Street, Cumberland, Maryland.

**Controlled Purchase from Puff & Stuff at 174 N. Center Street on April 23, 2012**

q.      On April 23, 2012, an undercover officer entered the Puff & Stuff store located at 174 North Center Street. The undercover officer was addressed by an unidentified white male who said he was the owner's son.

r.      The undercover officer asked the man if he had anything to take for energy. The man replied that all they have is "the spice." The man said that due to the Maryland laws, he cannot tell people what to do with the Spice.

s.      The undercover officer asked the man what the best stuff was. The man replied that the best stuff was sold out, but the stuff labeled "Wacky" is also good. The undercover officer agreed to purchase the "Wacky" and the man retrieved the "Wacky" from the counter.

t.      The undercover officer then asked the man what he could use to smoke it with. The man directed the undercover officer to the display case where the pipes were stored and pointed out the glass pipes. The undercover officer asked the man if that is the best thing to use to smoke it, and the man replied, yes, it is best for smoking the Spice.

u.      The undercover officer purchased the Spice for $20 and the glass pipe for $20. The man charged a total of $40 and did not charge any tax.

v.      Certified forensic chemists at the DEA Mid-Atlantic Laboratory chemically analyzed the Spice and concluded that the active ingredient in it was AM-2201 and JWH210 which are analogues of JWH-018, which is a Schedule I controlled dangerous substance.

**Controlled Purchase from Puff & Stuff at 130 N. Mechanic Street on September 17, 2012**

w.      On September 17, 2012, an undercover officer entered the Puff & Stuff store located at 130 North Mechanic Street.  This store was previously located at 174 North Center Street, but had moved to this new location.  Two employees, a man and a woman, were present behind the counter.

x.      The undercover officer asked if they had any Spice and the male employee replied that they had only what was left in the display case.  The display case contained packages of "Apple Bottom Potpourri."  The undercover officer purchased two packages of Spice that were one gram each.

y.      The Spice was not tested for analogues, but the Spice was the same type of substance that the undercover writer purchased in April 2012 at the North Center Street location.

**Controlled Purchase from Puff & Stuff at 130 N. Mechanic Street on January 23, 2013**

z.      On January 23, 2013, an undercover officer entered the Puff & Stuff store located at 130 Mechanic Street to make an additional purchase from the store.  Two employees, a man identified as Casey Jr., and an unidentified woman, were present behind the counter.

aa.     The undercover officer asked if they had any Spice and the employees described what they had.  The Spice was under the counter and was not sitting in view.  The female employee pulled out one container each of what they had.  The employees displayed four "brands" of Spice: Dr. Greene's Brand of Chronic Herb, Apple Bottom Potpourri, Crop Duster Potpourri, and two sizes of Chakra Herbal Incense.

bb.     The undercover officer asked the employees what they recommended, and Casey Jr. replied that they do not make recommendations.

cc.     The undercover officer told the female employee that he wanted the Dr. Greene's, Crop Duster, and Chakra.  At that time an unidentified male entered the store and asked if they had any Apple Bottom.  The undercover officer asked the unidentified man which one was best and the man replied that the Apple Bottom is the best.  The undercover officer then told the female employee to give him one of the Apple Bottom also.  The female employee charged the undercover officer $63.60 for the Spice.  She did not offer or give a receipt to the undercover officer, nor did she place the Spice in a bag.

dd.     The undercover officer turned custody of the Spice over to the DEA.

**Controlled Purchase from Puff & Stuff at 14401 National Highway on January 23, 2013**

ee. On January 23, 2013, an undercover officer entered the Puff & Stuff store located at 14401 National Highway. Two employees were present, a male behind the counter, later identified as Casey Sr., and an unidentified woman cleaning an area in another room.

ff. The undercover officer asked if they had any Spice, and Casey Sr. pointed to a wall display and stated that it was all they had left. The display had four "brands" of Spice: Dr. Greene's Brand of Chronic Herb, Apple Bottom Potpourri, Crop Duster Potpourri, and two sizes of Chakra Herbal Incense.

gg. The undercover officer asked Casey Sr. what he recommended, and the Casey Sr. replied that he does not use it.

hh. The undercover officer purchased the Crop Duster for $10.60. Casey Sr. did not offer or give a receipt to the undercover officer, nor did he place the Spice in a bag.

ii. The undercover officer asked Casey Sr. how often they get a shipment, and Casey Sr. replied that they get a shipment every other day. The undercover officer asked about another store location they are opening, and Casey Sr. verified that they are opening another store on Virginia Avenue in Cumberland, and that it will be a third location.

jj. The undercover officer turned custody of the Spice over to the DEA.

**Controlled Purchase from Puff & Stuff at 215 B Virginia Avenue on February 27, 2013**

kk. On February 27, 2013, an undercover officer entered the Puff & Stuff store located at 215 B Virginia Avenue. One male employee, Casey Sr., was present behind the counter.

ll. The store displayed two "brands" of Spice: Dr. Greene's Brand of Chronic Herb and Apple Bottom Potpourri.

mm. The undercover officer requested one packet of each of the two brands of Spice. Casey Sr. handed the packets of the Spice to the undercover officer, and then spoke with the undercover officer about smoking devices. Casey Sr. advised that the most popular smoking devices are the glass pipes.

nn. The undercover officer purchased the Dr. Greene's, Apple Bottom, and a pipe for a total of $68.40. Casey Sr. bagged the Spice, but he did not offer or give a receipt to the undercover officer.

oo. The undercover officer turned custody of the Spice over to the DEA.

**Analysis of Spice Products Obtained Through Controlled Purchases**

pp.     Certified forensic chemists at the DEA Mid-Atlantic Laboratory chemically analyzed the Spice
        obtained through controlled purchases, including the Apple Bottom and Dr. Greene's, and
        concluded that the active ingredient in it was UR-144, which is an analogue of JWH-018,
        which is a Schedule I controlled dangerous substance.

**Wage Reports**

qq.     A request for Maryland wage records for Casey Jr. and Traci placed in February, 2013,
        indicated that Casey Jr. and Traci do not have any record of legitimate earnings in Maryland.

rr.     A request for Virginia wage records for Casey Jr. and Traci placed in May, 2012, indicated
        that Casey Jr. had earned $3,732.06 in the 4th quarter of 2010, and $850.38 in the 1st
        quarter of 2011, and that Traci had no reported wages at that time.

**Subpoena for M&T Bank Records**

ss.     On February 28, 2013, investigating officers served a subpoena for records at M&T Bank.
        Records obtained through the subpoena detailed three active and current accounts.

tt.     M&T Bank account number xxxxxx3364 is listed to Charles W. Casey Jr. d/b/a Puff and Stuff.

uu.     Bank statements from March 2012 detail transactions of the business. The xxxxxx3364
        statement shows a balance of $28.85 with numerous overdrafts from prior statements.

vv.     Around the time Spice was being sold, the transactions and deposits increased. The ending
        balance for the next statement from April to May 2012 was $10,812.37. Those deposits
        continued to increase to $147,299.67 through the January 2013 statement.

ww.     On January 11, 2013, a $100,000 transfer was made from account number xxxxxx3364 to
        account number xxxxxx3289.

xx.     Since being opened in January 2013, the xxxxxx3289 account has become the main business
        account and is currently being used for electronic card transfers and debits.

yy.     The deposits in the xxxxxx3289 account have continued to grow to a total of $228,102.74 as
        of February 28, 2013.

zz.     Account number xxxxxx5451 is listed to Casey Jr. and Traci. This account has a total balance
        of $23,254.96, and deposits have increased since the sales of the Spice products.

**Application for and Execution of Search and Seizure Warrants**

aaa.   On March 6, 2013, investigative officers applied for and received five search and seizure warrants, granted by the Honorable H. Jack Price, District Judge for the State of Maryland.

bbb.   On March 7, 2013, officers executed the five search and seizure warrants at (1) the Casey's residence located at 129 Polk Street, Cumberland, Maryland; the three Puff & Stuff store locations at (2) 130 North Mechanic Street, Cumberland, Maryland; (3) 14401 National Highway, LaVale, Maryland; (4) 215 B Virginia Avenue, Cumberland, Maryland; and for the Casey's bank accounts at (5) M&T Bank located at 1150 Industrial Boulevard, Cumberland, Maryland.

ccc.   The search of the Casey's residence at 129 Polk Street yielded:

    1.   One (1) packet of Scare Crow brand Spice;

    2.   One (1) packet of Crop Duster brand Spice;

    3.   One (1) packet of Strawberry Fields brand Spice;

    4.   $1,430.00 in U.S. currency.

ddd.   The search of the Puff & Stuff store located at 130 North Mechanic Street yielded:

    1.   Five (5) packets of Dr. Greene's brand Spice;

    2.   One (1) packet of Crop Duster brand Spice;

    3.   Fourteen (14) packets of Red Bottom brand Spice;

    4.   Thirty-nine (39) packets of Scare Crow brand Spice;

    5.   Thirty (30) packets of Strawberry Fields brand Spice;

    6.   Fourteen (14) packets of Apple Bottom brand Spice;

    7.   $958.81 in U.S. currency.

eee.   The search of the Puff & Stuff store located at 14401 National Highway yielded:

    1.   Two (2) packets of Red Bottom brand Spice;

     2.     One (1) packet of Crop Duster brand Spice;

     3.     Six (6) packets of Dr. Greene's brand Spice;

     4.     Twenty-nine (29) packets of Scare Crow brand Spice;

     5.     Two (2) packets of Strawberry Fields brand Spice;

     6.     $1,535.00 in U.S. currency.

fff.     The search of the Puff & Stuff store located at 215 B Virginia Avenue yielded:

     1.     Six (6) packets of Apple Bottom brand Spice;

     2.     Six (6) packets of Red Bottom brand Spice;

     3.     Seven (7) packets of Strawberry Fields brand Spice;

     4.     Fifty-two (52) packets of Scare Crow brand Spice;

     5.     $1,072.41 in U.S. currency.

ggg.     The following accounts were seized pursuant to the execution of the search and seizure warrant at M&T Bank:

     1.     Account number xxxxxx3289, value $232,441.99;

     2.     Account number xxxxxx5451, value $21,995.22;

     3.     Account number xxxxxx3364, value $555.18.

**Conclusion**

hhh.     Accordingly, there is a reasonable belief that the $259,988.61 in United States currency seized on March 7, 2013, consisting of (a) $1,430.00 seized from the Casey's residence at 129 Polk Street, Cumberland, Maryland, (b) $958.81 seized from Puff & Stuff at 130 North Mechanic Street, Cumberland, Maryland, (c) $1,535.00 seized from Puff & Stuff at 14401 National Highway, LaVale, Maryland, (d) $1,072.41 seized from Puff & Stuff at 215 B Virginia Avenue, Cumberland, Maryland, (e) $232,441.99 seized from M&T Bank account number xxxxxx3289, (f) $21,995.22 seized from M&T Bank account number xxxxxx5451, and (g) $555.18 seized from M&T Bank account number  xxxxxx3364, constitutes (1) money,

negotiable instruments, securities and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; and (3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act in violation of 21 U.S.C. § 841 and thus is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

I DECLARE UNDER PENALTY OF PERJURY PURSUANT TO TITLE 28 U.S.C. § 1746 THAT THE FACTS SUBMITTED BY THE MARYLAND STATE POLICE DEPARTMENT, IN REFERENCE TO THE SEIZURE OF $259,988.61 U.S. CURRENCY FROM CHARLES CASEY, JR. AND TRACI CASEY ARE ACCURATE, TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

Joseph S. O'Keefe
Special Agent
Drug Enforcement Administration

**MEMORANDUM**

DATE:            August 26, 2013

TO:              Kristine Cupp
                 U.S. Marshal Service

FROM:            Jennifer Stubbs
                 Legal Assistant
                 U.S. Attorney's Office - District of Maryland

RE:              **U.S. v. $259,988.61 U.S. CURRENCY**

                 **Civil Action No.**

                 **CATS ID - 13-DEA-580600, 580601, 580609, 580610, 580613, 580982, 580983**
                 **Agency Case No. – BH-12-0019**

        The United States has filed a forfeiture action against **$259,988.61 U.S. CURRENCY**. A copy of the Complaint for Forfeiture is attached.

        Notice of this seizure will be published at www.forfeiture.gov pursuant to Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims.

        Thank you.


Attachment

1

| U.S. Department of Justice<br>United States Marshals Service | | PROCESS RECEIPT AND RETURN |
|---|---|---|
| PLAINTIFF<br>**UNITED STATES OF AMERICA** | | COURT CASE NUMBER |
| DEFENDANT<br>**$259,988.61 U.S. Currency** | | TYPE OF PROCESS<br>Verified Complaint in Rem |

| **SERVE**<br>▸<br>**AT** | NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC. TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN<br>**BH-12-0019/13-DEA-580600, 580601, 580609, 580610, 580613, 580982, 580983** |
|---|---|
| | ADDRESS (Street or RFD, Apartment No., City, State, and ZIP Code) |

| SEND NOTICE OF SERVICE TO REQUESTER AT NAME AND ADDRESS BELOW: | Number of process to be served with this Form - 285 |
|---|---|
| Jennifer Stubbs, Legal Assistant<br>U.S. Attorney's Office<br>36 S. Charles Street, 4th floor<br>Baltimore, Maryland 21201 | Number of parties to be served in this case |
| | Check for service on U.S.A. |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Address, All Telephone Numbers, and Estimated Times Available For Service)

Arrest property.  Fill in the date of arrest in this process receipt and return our copy.

| Signature of Attorney or other Originator requesting service on behalf of : | TELEPHONE NUMBER<br>(410) 209 4800 | DATE<br>8/26/13 |
|---|---|---|

### SPACE BELOW FOR USE OF U.S. MARSHAL ONLY - DO NOT WRITE BELOW THIS LINE

| I acknowledge receipt for the total number of process indicated.<br>(Sign only first USM 285 if more than one USM 285 is submitted) | Total Process<br>No. | District of Origin<br>No. | District to Serve<br>No. | Signature of Authorized USMS Deputy or Clerk | Date |
|---|---|---|---|---|---|

I hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc. at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☐ I hereby certify and  return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below).

| Name and title of individual served (If not shown above). | | ☐ A person of suitable age and discretion then residing in the defendant's usual place of abode. |
|---|---|---|
| Address (complete only if different than shown above) | Date of Service | Time<br>am<br>pm |
| | Signature of U.S. Marshal or Deputy | |

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount Owed to US Marshal or | Amount or Refund |
|---|---|---|---|---|---|---|

REMARKS:

PRIOR EDITIONS MAY BE USED        SEND  ORIGINAL + 2 COPIES to USMS.

**1. CLERK OF COURT  2. USMS Record  3. Notice of Service  4. Billing Statement  5. Acknowledgment of Receipt**